ADAMS, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEPHEN G. THOMAS, *et al.*, ) | |
| ) | CASE NO. 1:04CV2150 |
| Plaintiffs, ) | |
| ) | |
| v. ) | Judge John R. Adams |
| ) | |
| CITY OF SHAKER HEIGHTS, *et al.*, ) | MEMORANDUM OPINION & ORDER |
| ) | [Resolving Doc. 191] |
| Defendants. ) | |
| ) | |

This matter is before the Court on motion by Plaintiffs Stephen G. Thomas and Jennifer Fitzmartin for judgment non obstante veredicto (JNOV) on Plaintiffs' failure to train claim against Defendant City of Shaker Heights, for a new trial on Plaintiffs denial of medical care claim against the individual Defendants,[1] and for a new trial on Plaintiffs' wrongful death claims. Plaintiffs' motion was timely filed and timely opposed by Defendants the City of Shaker Heights, Chief of Police Walter A. Ugrinic, Officer Timothy Kohanski, Officer Thomas Clementi, Dispatcher Andrew McMillin, Jailer Leonard Piazza, and Scott Howard Frank, M.D. The Court has been fully advised, having reviewed the Motion, Opposition, Reply, exhibits, and applicable law. And, for the reasons stated below, the Court hereby DENIES Plaintiffs' motion in its entirety.

---

[1] Plaintiffs' Motion states that they seek "a new trial Pursuant to Rules 50(b), 50(c), and 59(a) of the Federal Rules of Civil Procedure, on Plaintiff's failure to train claim against Defendants. . . ." However, Plaintiffs' argument is that the jury's answers to the interrogatories on the denial of medical care claim were inconsistent with the evidence presented at trial. As such, it appears that Plaintiffs made a mistake in their motion and meant to seek a new trial on the denial of medical care claim. Even if this was not the case, however, and Plaintiffs are attempting to seek a new trial on the failure to train claim by arguing fault with the jury interrogatories on an unrelated claim, their argument is not well-taken for the reasons set forth herein.

### A. Plaintiffs' Motions for JNOV

Pursuant to Federal Rule 50(b), Plaintiffs move the Court to grant their motion for JNOV, or as the rule terms it, for judgment as a matter of law. In considering this motion, the Court must view the admissible evidence in a light most favorable to Defendants and must grant the motion only if a reasonable trier of fact could draw only one conclusion. *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983). According to Plaintiffs, their motion is proper because the City of Shaker Heights had a duty to properly train its employees and it failed to do so. As Plaintiffs note, in order to prevail on their claim for failure to train, they must have proven by a preponderance of the evidence the following elements: (1) that the City of Shaker Heights' training program was inadequate for the tasks the officers were required to perform; (2) that the inadequacy was the result of the City of Shaker Heights' deliberate indifference; and (3) that the inadequacy was closely related to or actually caused the injury. *Russo v. City of Cincinnati*, 953 F.2d 1036, 1046 (6th Cir. 1992) (citations omitted).

In support of their motion, Plaintiffs point to the fact that the Ohio Administrative Code required the City of Shaker Heights to approve a medical protocol and to supervise its implementation. Plaintiffs argue that the evidence presented at trial, which they claim is undisputed, shows that the officers charged with the decedent's care had never read the medical protocol, been given a copy of it, or been tested on its contents. And, as Plaintiffs argue, this failure was closely related to or actually caused the decedent's injury. They further point out certain failings of the officers, in support of their motion, which they attribute to the alleged lack of training. According to Plaintiffs, if the lack of training was not the actual cause of the decedent's death, then it was closely related to it.

2

Plaintiffs, however, are mistaken in their assertion that the "overwhelming evidence" in the case could lead a person only to the conclusion that the City of Shaker Heights acted with deliberate indifference by failing to adequately train its officers and that this failure to train was either closely related to or actually caused the decedent's injury. Even if the Court assumes that the evidence establishes that the officers' training was inadequate for the tasks that they performed, it is quite possible that the jury – after hearing all of the evidence – did not find that the lack of training was the result of the City of Shaker Heights' deliberate indifference. Moreover, it is certainly possible that the jury did not find that the alleged lack of training was the actual cause or closely related to the decedent's death.

Plaintiffs theory of the case was that the cause of the decedent's death was Alcohol Withdrawal Syndrome (AWS). Even if, as they argue in their motion, none of the officers involved in the decedent's care understood the symptoms or the risks of this syndrome, it is irrelevant if the jury did not find that the City of Shaker Heights' failure to train its employees in the dangers associated with AWS was done with deliberate indifference and that this failure to train the officers on AWS was either the actual cause of the decedent's death or closely related to it. Moreover, Defendants did put forth ample evidence from various sources that the decedent did not die from untreated AWS. Interpreting the evidence in a light most favorable to Defendants, the Court finds that it is possible that a reasonable trier of fact could have found in favor of Defendants. Therefore, The Court cannot grant Plaintiffs motion on this ground.

**B.     Plaintiffs' Motion for New Trial - Denial of Medical Care**

Alternatively, Plaintiffs seek a new trial on the ground that one answer to the jury interrogatories on Plaintiffs' claim for denial of medical care was inconsistent with the evidence.

3

The interrogatories on this claim asked the jurors to answer the following questions with regard to each of the named Defendants: (1) whether the decedent had a serious illness or injury prior to her death; (2) whether the particular Defendant was aware of the decedent's serious need for medical care; (3) whether the particular Defendant acted with deliberate indifference to the illness or injury of the decedent by failing to direct that medical care be provided or to allow her to obtain the care she needed; (4) whether the decedent was injured as a result of the particular Defendant's deliberate indifference to her serious medical needs; and (5) whether the particular Defendant was acting under color of state law.  (ECF Doc. 192 at 2-15).   The jurors answered no to all the questions, except to the question as to whether the individual Defendant was acting under color of state law.  This, Plaintiffs argue, was manifestly against the weight of the evidence because there was ample evidence in the record that the decedent was suffering from a number of serious health conditions in addition to her alcoholism and extremely high Blood Alcohol Content (BAC).

     As stated in their motion, Plaintiffs argue that the evidence they presented at trial showed that the decedent was suffering from alcoholism, diabetes, depression, and extremely high levels of intoxication.  These things, they argue, were not reflected in the jury's answer to the first question of the interrogatory that asked whether the decedent had a serious illness or injury prior to her death.  However, the fact that the jury answered that question differently than Plaintiffs think they should have does not mean that the Court should order a new trial.  It is quite possible that the jury just did not find that the decedent's alcoholism, diabetes, depression, and elevated BAC qualified as a serious illness or injury.  And, even though the Court instructed the jury that a "serious illness" need not be life-threatening, this instruction alone does not require the jury to

4

find these conditions amounted to serious illnesses or injuries. Certainly, are all illnesses, but the Court will neither question that perhaps the jury did not deem the decedent's illnesses as "serious," nor will it substitute Plaintiff's determination to that question. In addition, it is just as possible that the jury did not find that the decedent's high BAC was a serious "injury."

Furthermore, looking past the first interrogatory, there was ample evidence presented that the individual Defendants were not aware of the decedent's serious need for medical care, did not act with deliberate indifference toward her in failing to direct that medical care be provided or in allowing her to obtain medical care, and that she was not injured as the result of deliberate indifference on the part of any of the individual Defendants. Plaintiffs focus exclusively on the first interrogatory with the hope that the Court will agree that the jury's verdict was against the manifest weight of the evidence, but they choose to overlook the rest of the evidence that is not in their favor.

It is beyond dispute that certain Defendants and other City of Shaker Heights employees' conduct toward the decedent – a woman who was clearly suffering from and unable to control her alcoholism – was appalling. That she was called names and was the subject of jokes made at her expense demonstrates a lack of professionalism and courtesy that one would not expect from those who serve in positions of trust and authority. The Court, however, is not free to set aside a jury verdict even if it disagrees with that verdict, *Douglass v. Eaton Corp.*, 956 F.2d 1339, 1343 (6th Cir. 1992) (overruled on other grounds in *Weisgram v. Marley Co.*, 528 U.S. 440, 452 (2000)), or because different inferences or conclusions could have been drawn, *Martin v. Heideman*, 106 F.3d 1308, 1320 (citation omitted). Moreover, the Court is not free to set aside a jury verdict even if it believes that other results are more reasonable. *Martin*, 106 F.3d at 1320.

5

**C.    Plaintiffs' Motion for New Trial - Wrongful Death**

According to Plaintiffs, the Court erred in allowing Defendants to raise the defense of sovereign immunity pursuant to Chapter 2744 of the Ohio Revised Code.  They argue that Defendants waived the defense by failing to raise it as an affirmative defense in their Answer or in any subsequent pretrial motions.  Plaintiffs claim that they were prejudiced by the Court's decision to allow the defense, which they claim was not specifically articulated until the day before trial.  Plaintiffs claim that it was "fundamentally unfair" for the Court to permit Defendants to raise the defense for the first time the day before trial.

As Defendants point out, the Court allowed the parties to brief this very issue and heard oral arguments on it prior to trial.  It was not until after fully hearing the parties on this issue that the Court decided to allow the defense.  Furthermore, the Court stated its reasons for allowing the defense on the record.  And, as Defendants note, there is nothing that has changed or that requires the Court to reconsider and reverse itself.

It is worth noting, however, that while Defendant's Answer does not explicitly make reference to the Ohio Revised Code, it does state that "Defendants are entitled to absolute and/or qualified immunity."  (ECF Doc. 17 at 7).  Although Plaintiffs claim that it was waived because Defendants did not specifically plead the defense using the terms "sovereign immunity" or "statutory immunity under Chapter 2744 of the Ohio Revised Code" they cite to no law that requires the use of certain specific language in order to preserve the defense.  Rather, the case law to which they cite states only that immunity is an affirmative defense that must be expressly pled.  *See generally Spence v. Liberty Twp. Trustees*, 672 N.E.2d 213, 215 (Ohio App. 1996).  Here, Defendants preserved the defense of "qualified immunity" and that is enough, especially

6

because there is Ohio case law that refers to political subdivision immunity under the Ohio Revised Code as "qualified immunity." *See Barstow v. Waller*, 2004 WL 2427396 at *6 (Ohio App. 2004) (unpublished) (noting that "an employee of a political subdivision has *qualified immunity* under [Chapter 2744 of the Ohio Revised Code]" (emphasis added).

Furthermore, Plaintiffs clearly contemplated this defense prior to trial, as evidenced by the fact that they themselves cited to Ohio Revised Code § 2744.03(A)(6)(b) and (c) in their Proposed Jury Instructions.  (ECF Doc. 135-1 at 15).  Likewise, Defendants' Proposed Jury Instructions cited to the same section of the Ohio Revised Code. (ECF Doc. 135-2 at 9). Because both parties submitted their jury instructions to the Court on January 5, 2006, which was well in advance of trial, it can hardly be argued that Plaintiffs were subjected to some sort of unfair surprise with regard to this issue.  Defendants also submitted a trial brief on this issue the week before the trial.  (ECF Doc. 159-1).

Accordingly, for the reasons stated herein, Plaintiffs' motion is DENIED.

IT IS SO ORDERED.

| April 24, 2006 | *s/John R. Adams* |
|---|---|
| Date | John R. Adams |
| | U.S. District Judge |